IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SNYDER BROTHERS, INC.,** | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     v. | ) **Civil No. 19-1238** |
| | ) |
| **EAST OHIO REGIONAL HOSPITAL** | ) |
| **at MARTIN'S FERRY, INC. and** | ) |
| **ALECTO HEALTHCARE SERVICES** | ) |
| **MARTIN'S FERRY, LLC** *dba* | ) |
| **EAST OHIO REGIONAL HOSPITAL,** | ) |
| | ) |
|   Defendants. | ) |

## **OPINION and ORDER**

On September 26, 2019, Plaintiff Snyder Brothers, Inc. filed this Breach of Contract action against Defendants East Ohio Regional Hospital at Martin's Ferry, Inc. and Alecto Healthcare Services Martin's Ferry, LLC doing business as East Ohio Regional Hospital ("Alecto Healthcare") (collectively "Defendants"). ECF No. 1. Defendants have filed separate, but practically identical, Motions to Dismiss for lack of personal jurisdiction. ECF Nos. 10 & 14. Plaintiff filed a Brief in Opposition to the Motions, to which Defendants' filed a joint Reply. ECF Nos. 21 & 22. Plaintiff then filed a Sur-reply Brief. ECF No. 25. For the following reasons, Defendants' Motions to Dismiss will be denied.

### I. BACKGROUND

#### A. The Parties

Snyder Brothers, a Pennsylvania Corporation, located at 409 Butler Road, Kittanning, Pennsylvania 16201, is "an independent producer of natural gas in Pennsylvania". It supplies natural gas to clients in Pennsylvania, Ohio, and West Virginia. Compl. ¶¶ 1, 14.ECF No. 1. The East Ohio Regional Hospital at Martin's Ferry, Inc., a non-profit Ohio Corporation, formerly

1

owned and operated the East Ohio Regional Hospital located at 90 N 4th Street, Martins Ferry, Ohio 43935.  *Id*. at ¶ 2; The hospital facility provided inpatient and outpatient medical care until September 27, 2019, when it ceased operations. Alecto's. Br. Supp. 1, ECF No. 12.  Alecto Healthcare, a for-profit, limited liability Delaware Corporation, is also located at 90 N 4th Street, Martins Ferry, Ohio 43935. Compl. ¶ 3. The East Ohio Regional Hospital at Martins Ferry, Inc. sold its assets, debts, and liabilities to Alecto Healthcare, which then became the owner and operator of the East Ohio Reginal Hospital. *Id.* at 1, at ¶ 5.  Defendant East Ohio Regional Hospital at Martins Ferry, Inc. and Defendant Alecto Healthcare are affiliated corporations sharing common management and control. *Id.* at ¶ 4. Neither the Plaintiff nor Defendants distinguish between the relevant conduct of the two Defendants.  Therefore, the two Defendants will be collectively referenced as the "Hospital".

    B.  **The Agreements**

On May 25, 2016, Plaintiff and the Hospital entered into a Natural Gas Agreement for Plaintiff to supply natural gas to the East Ohio Regional Hospital.  ECF No. 1-2.   In two successive Term Purchase Orders, the parties specified the monthly quantity and pricing for gas to be supplied to the Hospital during each respective Term Purchase Order sales period.  ECF Nos. 1-3 & 1-4.   The first Term Purchase Order, also executed on May 25, 2016, covered the period of July 1, 2016 to December 31, 2018.  ECF No. 1-3.  The second Term Purchase Order, executed by the Hospital on October 1, 2018 and by the Plaintiff on November 12, 2018, covered the period of January 1, 2019 to December 31, 2021.  ECF No. 1-4.  The Natural Gas Agreement provided that Plaintiff "agrees to sell and deliver, and [Hospital] agrees . . . to buy and take delivery of all quantities of natural gas required at the Point of Delivery specified on purchase order[s]." ECF No. 1-2, at ¶ 2. The "Point of Delivery", as set forth in the Purchase Orders, was to "Columbia Gas of Ohio City Gate," located in Ohio. ECF No. 1-3, at ¶ 5 and ECF No. 1-4, at ¶

5. The Natural Gas Agreement provided that Plaintiff "shall obtain transportation to the Point of Delivery," and Defendants "shall obtain transportation from the Point of Delivery." ECF No. 1-2, at ¶ 3. The Natural Gas Agreement further provided that, "[t]itle to, and possession of, and risk of loss of the Gas will pass from the Seller to the Buyer at the applicable Point of Delivery." *Id.* at ¶ 11. Plaintiff alleges that the Hospital breached the agreement by not paying for certain quantities of natural gas the Hospital received and used during 2018 and 2019. Compl. at ¶¶ 21-23, 29.

### C. Factual Averments in Support of Personal Jurisdiction

Plaintiff's Complaint alleges that personal jurisdiction is proper, in part, for the following reasons:

> Defendants executed a contract with Plaintiff with full knowledge that Plaintiff was a citizen of Pennsylvania; Defendants established a long-term relationship with Plaintiff through their contract; Defendants purposefully invoked the benefits and the protections of Pennsylvania law through the choice of law provision in the parties' contract Defendants repeatedly contacted Plaintiff in Pennsylvania regarding the negotiations and the execution of the parties' contract; Defendants obligated themselves to remit payments to Plaintiff in Pennsylvania under the parties' contract in Pennsylvania and had done so; Defendants, by failing to remit payment, knowingly inflicted financial harm on Plaintiff in Pennsylvania; and Plaintiff's claim arises out of and relates to Defendants' contacts with Pennsylvania.

Compl. ¶ 7. Plaintiff retained T&F Exploration, LP, a Pennsylvania entity located in Pittsburgh, Pennsylvania, as its agent to arrange for the sale of Plaintiff's natural gas to potential clients. Decl. of Frank Ross ¶ 4, ECF No. 21-4. The Hospital retained the services of Axis Energy Solutions, LLC, from Wheeling, West Virginia, as their agent to locate, negotiate, and secure a natural gas supplier. *Id.* ¶ 5. Plaintiff asserts that its agent responded to a February 25, 2016 inquiry from the Hospital's agent seeking quotes for gas supply for the Hospital. *Id.* ¶ 7. The parties' Natural Gas Agreement was arranged through said brokers. Pltf. Br. Opp. 3, ECF No. 21. Following the agents' emails and phone conversations between February 25, 2016 and May 16, 2016, initial agreements were reached. Ross Decl. ¶ 7  Both the Natural Gas Agreement and

3

the first Term Purchase Order were executed on May 25, 2016.  From about July 5, 2017 through November 6, 2018, the Plaintiff's and the Hospital's respective agents continued to communicate with one another by email and telephone about the 2016 agreements, the Hospital's past-due payments, and they negotiated the second Term Purchase Order.  *Id.* at ¶¶ 8-17, 19a-d, 19g.  On October 5, 2018, Plaintiff accepted Hospital's oral offer to enter into a "payment plan agreement."  *Id.* at ¶¶ 19a-c.  Thereafter, on November 12, 2018, the parties signed their second Term Purchase Order.  After November 12, 2018, the agents continued to communicate by email and telephone about the Hospital's delinquent payments. *Id.* at ¶¶ 18,19e-f, 19h-l.

## II.   DISCUSSION

In accordance with the Federal Rules of Civil Procedure, a pleading may be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).   Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law for the court.  *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1996). The plaintiff bears the burden of establishing personal jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state.  Fed. R. Civ. P. 4(k)(1)(A).  Under Pennsylvania's long-arm statute, the Court may assert personal jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States."  42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). To determine whether there is personal jurisdiction, the court "must ask whether, under the Due Process Clause, the defendant 'has certain minimum contacts with. . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *O'Connor*, 496 F.3d at 316 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Consistent with the requirements of due process, a District Court must ensure

4

that a defendant is subjected to personal jurisdiction only where that "nonresident Defendant has 'certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'". *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *International Shoe*, 326 U.S. at 316). Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies. *Helicopteros*, 466 U.S. at 412.

General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff does not allege that general jurisdiction exists over the Hospital, therefore only specific jurisdiction is relevant.

Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992). Specific personal jurisdiction comports with due process as long as the Defendant has sufficient minimum contacts with the forum state. *See International Shoe*, 326 U.S. at 316. The due process inquiry must focus on "'the relationship among the defendant, the forum, and the litigation.'" *Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (quoting *Shaffer v. Heitner*, 433 U.S. 186 (1977)). First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales*, 466 U.S. at 418 n.13; *Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). Third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting

*Int'l Shoe*, 326 U.S. at 320 n. 2).  It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253 (1958).  Put another way, when a defendant's conduct is such that she reasonably should have foreseen being hailed into court in the forum, the necessary minimum contacts have been shown.  *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. *Burger King*, 471 U.S. at 476.

When a defendant raises a lack of personal jurisdiction defense, the plaintiff bears the burden of producing sufficient facts to establish that jurisdiction is proper.  *Mellon Bank (East) PSFS, Nat'l Assoc.,* 960 F.2d at 1223.  "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).  "A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King,* 471 U.S. at 478).

Plaintiff argues that the Hospital has demonstrated sufficient minimum contacts in a variety of ways, justifying this Court's exercise of personal jurisdiction.  Plaintiff argues in favor of the exercise of personal jurisdiction by emphasizing the length of the parties' relationship and contracts, the number and frequency of the parties' communications, and the complexity of the business relationship and resulting contracts.  *See* Pltf. Br. Opp. 11-17.  Plaintiff also argues that personal jurisdiction exists because the Hospital sent payments into

Pennsylvania, and because the Hospital's breach of contract caused injury in Pennsylvania. *Id.* at 18-19, 20. Finally, the Natural Gas Agreement required that notices were to be sent to Plaintiff in Pennsylvania and also designated Pennsylvania law as their choice of law provision *Id.* at 19-20, 20-21. In response, the defense focuses on the ordinary nature of the parties' agreement, arguing that the agreement required a Pennsylvania corporation to provide a single product (gas supply) in Ohio to an Ohio resident (the Hospital). The defense argues that the only significant connection the Hospital had with Pennsylvania was its purchase of a Pennsylvania commodity (gas supply), and that the Hospital did not possess title to the gas until it was in Ohio.

In considering the issue of whether the Hospital directed purposeful activity to Pennsylvania, the Plaintiff argues that the Hospital solicited business from Pennsylvania. The Natural Gas Agreement and first Purchase Order were arranged through agents acting on behalf of each agent's respective party. An agent's actions are attributed to the principal, just as though the principal had negotiated the agreement directly. *See General Elec. Co. v. Deutz AG,* 270 F.3d 144 (3d Cir.2001) (one aspect of analysis is whether defendant's contacts with the forum were instrumental to the contract formation) Here, Plaintiff asserts that the Hospital's agent, who was located in West Virginia, initiated communications with the Plaintiff's agent, who was located in Pennsylvania. Pltf. Br. Opp. 24. The defense does not refute this assertion. In addition, the Complaint sufficiently alleges facts that numerous and essential communications and negotiations occurred between the parties through their agents during the initial formation and throughout the duration of the parties' relationship until the alleged breach at issue in this litigation. Thus, this factor supports Pennsylvania jurisdiction.

The terms of the contracts at issue are also relevant to the jurisdiction analysis. The Natural Gas Agreement designated Pennsylvania law as the parties' choice of law provision. In

addition, said Agreement provided that any notices were to be sent to Plaintiff in Pennsylvania. Pursuant to the Agreement, the Hospital remitted payments to Pennsylvania. And, the Hospital's alleged breach of contract by non-payment caused damage in Pennsylvania. All of these factors favor Pennsylvania Jurisdiction.

The length of the parties' relationship and connection with the forum jurisdiction are also relevant considerations. The "length of the contractual relations between parties residing in different states is a major consideration in deciding personal jurisdiction matters." *Novacare, Inc. v. Strategic Theracare All.*, No. CIV. A. 98-6205, 1999 WL 259848, at *9 (E.D. Pa. Apr. 30, 1999). Here, through several agreements, the parties contracted for gas supply over a 5 year period. The contemplated length of the relationship, although not determinative, weighs in favor of establishing personal jurisdiction. In addition, the extensive communications between the parties from 2016 through 2019 also supports the exercise of Pennsylvania personal jurisdiction over the Hospital.

The parties' course of dealings is also instructive to the jurisdiction analysis. After their initial agreement and Purchase Order, the parties negotiated and entered into a second Term Purchase Order agreement for the supply of gas to the Hospital. Before that could occur, the parties had to resolve the Hospital's ongoing delinquent payment problems. The resolution came by way of a separate "payment plan agreement" proposed by the Hospital. The payment plan agreement and the Second Purchase Order evidences a course of conduct that the parties intended to continue their long-term business relationship. These transactions created a longer-term relationship and provided for the Hospital's continuing and extended obligations to the Plaintiff in Pennsylvania. Such conduct supports the conclusion that the parties purposefully availed themselves of the benefits and protection of Pennsylvania law and it favors Pennsylvania personal jurisdiction over the Hospital.

As regards the minimum contact analysis in this case, the Hospital attempts to distinguish this case from Plaintiff's cited cases that support Pennsylvania jurisdiction.[1]  Defense argues that, because the Natural Gas Agreement provided for delivery of the gas from Pennsylvania to Ohio, Plaintiff's cited cases do not apply.  However, in *Thrivest Legal Funding, LLC v. Gilbert*, the District Court for the Eastern District of Pennsylvania found that defendant's contacts with Pennsylvania were sufficient to enable the exercise of specific personal jurisdiction.  2017 WL 1208064 (E.D. Pa. Apr. 3, 2017).  In *Thrivest*, the defendant, Gilbert, entered into several contracts with plaintiff for advance funding of lawsuits he hoped to settle, after which he would pay a fee to plaintiff. 2017 WL 1208064, *1.  Gilbert never personally entered Pennsylvania.  He communicated with plaintiff on numerous occasions, including after Gilbert failed to make payments.  *Id.*  In finding the necessary minimum contacts, the District Court noted that Gilbert's continuing communications into Pennsylvania beyond the negotiation phase, the choice-of-law provision, and Gilbert's payments by check mailed into Pennsylvania supported Pennsylvania Jurisdiction.  2017 WL 1208064, *3-*4.  The District Court also noted that Gilbert's contracts required a continuing obligation to repay plaintiff for advanced fees that lasted until Gilbert's underlying lawsuits resolved.  2017 WL 1208064, *4.

---

[1] Plaintiff cites the following cases, among others, to support specific jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007) (defendant directed mailings and phone calls into Pennsylvania in hopes of getting Pennsylvania residents to buy its goods *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (defendant solicited a Pennsylvania attorney to provide legal services in Pennsylvania pursuant to the Pennsylvania Rules of Professional Conduct); *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992) (defendants obtained three loans from a Pennsylvania bank governed by Pennsylvania law); *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687 (3d Cir. 1990) (plaintiff gas company was required to and did reserve storage space in gas company's storage fields located in Pennsylvania); *JDTech Industries v. Mortech Manufacturing Company, Inc.*, 2018 WL 5300400 (W.D. Pa. Sept. 27, 2018) (defendant shipped, or directed, its merchandise into Pennsylvania over a period of time); *Vizant Technologies, LLC v. Whitechurch*, 97 F.Supp. 3d 618 (E.D. Pa. 2015) (out-of-state defendants entered into employment agreements requiring the provision of professional services to a Pennsylvania employer, which also required travel to and work in Pennsylvania); *Guzzi v. Morano*, 2011 WL 4631927 (E.D. PA. Oct. 6, 2011) (defendants conducted meetings  in Pennsylvania to recruit a Pennsylvanian to sell insurance policies to Pennsylvania residents); and *Bizarre Foods Inc. v. Premium Foods, Inc.*, 2003 WL 21120690 (E.D. Pa. May 16, 2003) (defendant had right to collect accounts receivable in Pennsylvania governed by Pennsylvania law).

Here, the contacts between the parties extend beyond bare minimal contact. The parties engaged in extensive, ongoing communications that lasted beyond the initial negotiation phase. The Hospital also demonstrated a desire to engage in a long-term business relationship with Plaintiff through successive agreements and transactions. Pursuant to their long-term supply agreements the Hospital established continuing obligations to pay Plaintiff. The Hospital initiated the payment plan negotiations for agreement, which further established the Hospital's continuing obligations and contract with Plaintiff, a resident Pennsylvania corporation. The Natural Gas Agreement contained a choice-of-law provision in favor of Pennsylvania and required notices to be sent to Plaintiff in Pennsylvania. Finally, the Hospital sent payments into Pennsylvania and its breach of contract caused damages in Pennsylvania. All of the above arise from and relate to the Hospital's contacts and contracts with the Plaintiff in Pennsylvania. They also relate to the Plaintiff's Breach of Contract claim in this litigation. *Helicopteros Nacionales*, 466 U.S. at 418 n.13. Accordingly, there are sufficient minimum contacts for the exercise of specific personal jurisdiction over the Hospital within the Western District of Pennsylvania.

Finally, the Hospital is located in the Southern District of Ohio, which is in relatively close proximity to the Western Districtof Pennsylvania. Given the increasing use of electronic communications and exchanges of documents, discovery over the geographic distance is not burdensome. Pennsylvania also has an interest in adjudicating a dispute that concerns a Pennsylvania corporation, where the parties have dictated that Pennsylvania law will apply. As such, litigation in this forum would impose minimal burden upon the Hospital. Accordingly, in the totality of circumstances, exercising Pennsylvania jurisdiction over the Hospital in this case does not offend traditional notions of fair play and substantial justice.

### III.  CONCLUSION

Defendants' Motions to Dismiss, ECF Nos. 10 & 14, are hereby DENIED.  Defendants shall file an Answer to the Complaint within 14 days of the filing of this Opinion and Order.

IT IS SO ORDERED.

DATE  June 11, 2020

Marilyn J. Horan
United States District Judge